UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| STEVEN GARAVAGLIA, | Case No. 18-12237 |
| Plaintiff, | Terrence G. Berg |
| v. | United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY, | Stephanie Dawkins Davis United States Magistrate Judge |
| Defendant. _____/ | |

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 13, 14)**

**I.   PROCEDURAL HISTORY**

   A.   Proceedings in this Court

   On July 17, 2018, plaintiff Steven Garavaglia filed the instant suit. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Terrence G. Berg referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a period of disability and disability insurance benefits. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 13, 14).

   B.   Administrative Proceedings

   Garavaglia filed an application for a period of disability and disability insurance benefits on November 2, 2015, alleging disability beginning on

1

November 2, 2015. (Tr. 14).[1] The claims were initially disapproved by the Commissioner on January 14, 2016. Plaintiff requested a hearing and on July 17, 2017, he appeared with counsel, before Administrative Law Judge ("ALJ") Patricia S. McKay, who considered the case *de novo*. (Tr. 14-23). In a decision dated September 29, 2017, the ALJ found that plaintiff was not disabled. (Tr. 22). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on May 27, 2018, denied plaintiff's request for review. (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Garavaglia, born July 19, 1967, was 48 years old on the alleged disability onset date. (Tr. 21). He has past relevant work as a carpenter. (*Id.*). He claims he cannot work because of sharp back pain. (Tr. 41). He injured his back at work when he was 22 or 23 years old. (Tr. 42-43).

---

[1] The Administrative Record appears on the docket at entry number 11. All references to the same are identified as "Tr."

2

The ALJ applied the five-step disability analysis and found at step one that Garavaglia had not engaged in substantial gainful activity since November 2, 2015, the alleged onset date. (Tr. 16). At step two, the ALJ found that Garavaglia's history of degenerative disc disease/osteoarthritis and herniated lumbar discs and hypertension with syncope were "severe" within the meaning of the second sequential step. (Tr. 17). However, at step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations. (Tr. 18).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except only occasional climbing of stairs, crouching, crawling, kneeling, and stopping/bending [sic]; and must avoid workplace hazards such as dangerous, moving machinery and unprotected heights, which precludes climbing ladders, ropes, and scaffolding.

(Tr. 18). At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (Tr. 21). At step five, the ALJ denied plaintiff benefits because she found that there were jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 21-22).

3

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920. Essentially, the ALJ must determine whether: (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform. (*Id.*). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis and Conclusions

Garavaglia's sole argument is that the ALJ erred at step three of the sequential analysis when she "failed to obtain an expert medical opinion regarding medical equivalency" of Listing 1.04A. (Dkt. 13, at p. 7-8). At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1; 20 C.F.R. § 404.1520(a). An impairment that meets only some of the medical criteria, but not all does not qualify, despite its severity. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Conversely, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled, and entitled to benefits. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Berry v. Comm'r of* Soc. Sec., 34 Fed. Appx. 202, 203 (6th Cir. 2002). The burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). An impairment

or combination of impairments is considered medically equivalent to a listed impairment ". . . if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *See Land v. Sec'y of Health & Human Servs.*, 814 F.2d 241, 245 (6th Cir. 1986) (per curiam).

Here, the ALJ found that Garavaglia "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 18). Specifically, the ALJ concluded that the severity of Garavaglia's impairments, considered singly and in combination, does not meet or medically equal the criteria of any impairment listed in 1.04—Disorders of the Spine. Further, the ALJ found that the signs of nerve root compression, limitations of motion, muscle weakness, and lumbar stenosis with pseudoclaudication were not as severe as alleged, and Garavaglia had a normal gait, not requiring an assistive device.

Garavaglia relies on Social Security Ruling (SSR) 17-2p, which became effective March 27, 2017, for the proposition that the Ruling "requires certain evidentiary requirements" on the issue of medical equivalence. (Dkt. 13, at p. 7-8). Specifically, Garavaglia quotes the following:

> To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following:

10

> 1. A prior administrative medical finding from a[ ] [medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or
>
> 2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or
>
> 3. A report from the [Appeals Council's ("AC")] medical support staff supporting the medical equivalence finding.

(*Id.* at p. 8) (quoting SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017)). However, the language on which Garavaglia relies "makes clear that it applies only when the ALJ finds that the claimant's impairments *are* medically equivalent to a Listing. Here, [on September 29, 2017,] the ALJ found the opposite"—that Garavaglia's impairments are *not* medically equal to a Listing. *Cooper v. Comm'r of Soc. Sec.*, 2019 WL 2240711, at *4 (E.D. Mich. Apr. 8, 2019), *adopted*, 2019 WL 2208151 (E.D. Mich. May 22, 2019) (emphasis in original).

The Ruling goes on to describe the evidentiary requirements applicable to a finding of no medical equivalence: the ALJ is not required to obtain medical expert evidence to make a step three finding that the impairments do not medically equal a listed impairment. SSR 17-2p, 2017 WL 3928306, at *4. As for the ALJ's articulation of such a finding, the Ruling provides:

> [A]n adjudicator at the hearings or AC level must consider all evidence in making a finding that an individual's impairment(s) does not medically equal a

11

> listing. **If an adjudicator at the hearings or AC level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding.** An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

*Id.* (emphasis added).

Since the ALJ in this case found that Garavaglia's impairments did not medically equal a listing, specifically listing 1.04, the ALJ's failure to obtain a medical expert opinion on equivalence is not error, and the ALJ's articulation of her finding is sufficient under the Ruling. Accordingly, the case should not be remanded for consideration by a medical expert on equivalence.

While Garavaglia's argument is only that the ALJ erred in failing to obtain an expert medical opinion on equivalence for listing 1.04A, he mentions that the medical evidence "could reasonably be interpreted to be equivalent" to the listing. He does not specifically argue that the ALJ's equivalency finding is not supported by substantial evidence, instead insisting that the medical evidence raises the need for a medical opinion. (*See* Dkt. 13, at p. 9-10). In any event, the undersigned

agrees with the Commissioner that the medical evidence does not suggest that Garavaglia's impairments equal 1.04A, and the ALJ's decision on the same is supported by substantial evidence. (*See* Dkt. 14, at pp. 9-13).

Listing 1.04A, as effective on the date of the ALJ's decision, requires a disorder of the spine (such as Garavaglia's degenerative disc disease) resulting in the compromise of a nerve root, including the cauda equina, or spinal cord with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).

The medical records show some positive objective findings on his lumbar spine prior to the alleged onset date. In August 2014, over a year before the alleged onset date, he had decreased range of motion in the lumbar spine with slight swelling. (Tr. 470). Garavaglia underwent an MRI of his lumbar spine in July 2015. The test revealed large extruded herniated discs at L3-L4 and L4-L5, and disc bulging or herniation and narrowing of the disc space at L5-S1. Notably, the cauda equina nerve roots appeared satisfactory. (Tr. 233). In August 2015, Garavaglia had normal range of motion in the lumbar spine in one record (Tr. 241)

13

and decreased extension in the lumbar spine, as well as mild pain in the paraspinal region, in another record (Tr. 254).

The medical records on and after the alleged onset date tend to suggest that, while Garavaglia experienced back pain with some radiation of pain, it was not disabling or equal in severity to listing 1.04A. On November 2, 2015, the alleged onset date, Garavaglia had 5/5 strength and negative straight leg raising test. There were no obvious sensory deficits, he was mildly tender about the spine, and had good range of motion with pain only with trunk flexion beyond 45 degrees. (Tr. 275). He presented again with complaints of back pain flare-up in June 2016. His strength was "good throughout," he had "pretty good" range of motion but increased pain with trunk flexion beyond 45 degrees, minimal tenderness over lumbosacral spine, and he was ambulating without an assistive device. (Tr. 308). He was holding off on surgery at that time, though his doctor noted that in the future he may need surgery. His doctor also stated that he could do any activity his body allowed him to do and did not place him on any restrictions. (Tr. 309). In June 2017, Garavaglia denied muscle aches, joint pain, back pain, and swelling. He had normal gait and was ambulating without an assistive device. He had no muscle atrophy, no paraspinal tenderness, and normal range of motion in the lumbar spine. His strength was 5/5 throughout and he had normal sensation in his lumbar and sacral spine. He was noted to be doing "very well" overall with his

14

back, and his pain was controlled with medication. (Tr. 533). He was given a Tramadol prescription for lumbar radiculopathy pain and was advised to do exercises for his lumbosacral spondylosis without myelopathy. (Tr. 534). There is no positive straight leg raising test in the record.

The ALJ discussed the evidence summarized above and concluded that, based on this evidence, Garavaglia was not disabled, and did not meet or equal listing 1.04A. The medical evidence provides substantial support for the ALJ's decision. There is scant evidence in support of Garavaglia's positions: he has lumbar radiculopathy and before the alleged onset date a few medical records note decreased lumbar range of motion. On the alleged onset date and after, however, Garavaglia had largely normal findings on his lumbar spine, including normal range of motion, normal strength and sensory examination, and no straight leg raising test. All this evidence together does not raise a question as to whether Garavaglia's impairment is at least as severe at listing 1.04A such that it could medically equal the listing.[2] Additionally, all the reasons articulated by the ALJ in the RFC assessment provide a "rationale that is sufficient for [this Court] to determine the basis for the finding about medical equivalence at step 3." SSR 17-

---

[2] Notably, Garavaglia does not contest the ALJ's assessment of the medical evidence or his subjective complaints, nor does he challenge the ALJ's RFC finding.

2p, 2017 WL 3928306, at *4. For these reasons, the undersigned suggests that there is no basis on which to remand this case.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 10, 2019                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 10, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7850
                                         tammy_hallwood@mied.uscourts.gov